IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | |
|---|---|
| MANUEL MILIAN, *et al.*,<br>Plaintiffs,<br><br>v.<br><br>WORSHAM KREYNUS PROPERTIES, LLC,<br>Defendant & Third-Party Plaintiff,<br><br>v.<br><br>GEORGE H. CROFT, JR.,<br>Third-Party Defendant. | Civil No. 3:18-cv-724 (DJN) |

## MEMORANDUM OPINION

Plaintiffs Manuel Milian, Karla Guzman and Ruth Tobar (collectively, "Plaintiffs") bring this action against Worsham Kreynus Properties, LLC ("Defendant"), alleging that Defendant engaged in illegal and discriminatory housing practices and committed other wrongs in violation of Plaintiffs' rights under the federal and Virginia Fair Housing Acts and as tenants of Worsham Mobile Home Park ("Worsham Park" or the "Park"). On February 22, 2019, Defendant filed a Third-Party Complaint (ECF No. 20) against Third-Party Defendant George C. Croft, Jr. ("Croft"), alleging that Croft is or may be liable to Defendant for the claims in Count VIII of Plaintiffs' Amended Complaint (ECF No. 15), which relate to Defendant's alleged failure to repair drainage problems at Worsham Park in violation of Va. Code § 55-248.43(2). This matter now comes before the Court by consent of the parties pursuant to 28 U.S.C. § 636(c)(1) on Croft's Motion to Dismiss (ECF No. 45), moving to dismiss Defendant's Third-Party Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), or, in

1

the alternative, to sever the Third-Party Complaint pursuant to Rule 12(h)(3). For the reasons set forth below, the Court GRANTS Croft's Motion to Dismiss (ECF No. 45) and DISMISSES WITHOUT PREJUDICE Count VIII of Plaintiffs' Amended Complaint (ECF No. 15) and Defendant's Third-Party Complaint (ECF No. 20).

## I. BACKGROUND

When, as here, "a defendant asserts that the complaint fails to allege sufficient facts to support subject matter jurisdiction, the trial court must apply a standard patterned on Rule 12(b)(6) and assume the truthfulness of the facts alleged." *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009). Accordingly, the Court accepts the following facts.

### A. Allegedly Discriminatory Housing and Rent Collection Practices

Defendant owns and operates Worsham Park, a mobile home park composed of 106 lots located in Richmond, Virginia. (Am. Compl. (ECF No. 15) ¶ 14.) Worsham Park tenants own their homes, but rent lots from Defendant. (Am. Compl. ¶ 14.) Of these tenants, approximately 85 percent identify as Hispanic or Latin American. (Am. Compl. ¶ 15.) And 75 percent of the Hispanic/Latino households at Worsham Park include minor children. (Am. Compl. ¶ 15.)

Between 2008 and November 2017, Defendant collected a fifteen-dollar-per-resident rent surcharge for each resident occupying a home beyond the first one or two adults listed on the title to the home. (Am. Compl. ¶¶ 16-17; *see also* Ex. A to Am. Compl. ("Jan. 2017 Lease") (ECF No. 15-1) at 1 (showing $15.00 charge "per extra individual and/or residing co-signer" not "on title of the trailer"); Ex. B to Am. Compl. ("2010 Homeowner Responsibilities") (ECF No. 15-2) at 1, § A.6. ("An extra charge will be in effect for adult persons (including spouses) not on the title or purchase agreement for the trailer. Each child or family member residing in the home will be charged an added fee.").) In addition to the per-resident rent surcharge, Defendant also

enforced policies that Plaintiffs allege discriminated against tenants with families and Hispanic/Latino tenants, including: (1) a 10:00 p.m. curfew for minors seventeen and under Sunday through Thursday and an 11:00 p.m. curfew for such minors on Friday and Saturday, (Jan. 2017 Lease ¶ 15.c.); (2) a requirement that minors be under adult supervision at all times, (Jan. 2017 Lease ¶ 15.c.; 2010 Homeowner Responsibilities at 4, § G.7.); (3) a prohibition on the consumption of alcohol in front of minors, (Jan. 2017 Lease ¶ 15.d.); (4) the threat of immediate eviction if children entered the lot of another tenant without that tenant's permission, (2010 Homeowner Responsibilities at 4, § G.6.); (4) a prohibition on "kiddie pools" throughout the Park, (2010 Homeowner Responsibilities at 9, § F.4.); and, (5) a requirement that minor invitees be supervised by an adult parent resident, (2010 Homeowner Responsibilities at 13, § C.3.). (Am. Compl. ¶ 19.) Moreover, since 2009, Defendant has issued Violation Notices to tenants for various enumerated infractions, including one infraction titled "Children." (Am. Compl. ¶ 21; Ex. C to Am. Compl. ("Sample Notice") (ECF No. 15-3).)

**B.  Policies and Practices Allegedly Violating Virginia Law**

Until November 2017, the Worsham Park Lease and Homeowner Responsibilities documents included several other provisions which Plaintiffs allege violated either the Manufactured Home Lot Rental Act ("MHLRA"), Va. Code § 55-248.41 *et seq.*, or the Virginia Residential Landlord and Tenant Act ("VRLTA"), Va. Code § 55-248.2 *et seq.*, namely: (1) provisions prohibiting the subletting of mobile homes or rooms within mobile homes at the Park, (Jan. 2017 Lease ¶ 8; 2010 Homeowner Responsibilities at 1, §§ A.10-11. and 3, §§ E.5., E.7.); (2) provisions requiring that mobile homes undergo a landlord inspection before resale and giving Defendant discretion to deny potential buyers, (Jan. 2017 Lease ¶ 8; 2010 Homeowner Responsibilities at 2, §§ A.11., A.18., B.1.b. and 13, § C.1.); (3) provisions requiring residents to

3

constantly supervise any guests and otherwise restricting the movement of guests in the Park, (Jan. 2017 Lease ¶ 15.b.; 2010 Homeowner Responsibilities at 2, §§ A.15., C.3. and 3, §§ E.1., E.6.); (4) a provision limiting the liability of Defendant and Plaintiffs' right to recover damages, (Jan. 2017 Lease ¶ 16); (5) a provision giving evicted tenants only thirty days, not the statutory ninety days, to sell or remove their home from the Park, (Jan. 2017 Lease ¶ 11); (6) a provision giving Defendant wide discretion to deny lease renewals, (2010 Homeowner Responsibilities at 1-2, § A.14.); (7) a provision allowing Defendant to increase the rent of all tenants in the Park before the end of a lease term, (Jan. 2017 Lease ¶ 4); and, (8) provisions allowing for the eviction of tenants for reasons beyond those enumerated under Virginia law, (2010 Homeowner Responsibilities at 1, § A.13., 3, § D.5., 4, § G.6., and 12, § A.2.). (Am. Compl. ¶ 25.) Moreover, Defendant failed to provide Plaintiffs with a copy of the MHLRA as required. (Am. Compl. ¶¶ 27-28.)

In addition to the alleged violations of Virginia law contained in the Lease and the Homeowner Responsibilities documents, Plaintiffs further maintain that Defendant violated the MHLRA by failing to repair the Park's storm-water drainage system such that the northern side of the Park flooded each time that it rained heavily. (Am. Compl. ¶¶ 29-30.) Specifically, with each heavy rain, the northern side of the Park filled with water up to eighteen inches deep in parts, covering the roads leading to the Park's only entrances and exits. (Am. Compl. ¶¶ 30-31.) The flooding took approximately three to four days to fully drain, preventing Plaintiff Ruth Tobar from leaving the Park and otherwise preventing Plaintiffs from enjoying the use of their properties. (Am. Compl. ¶¶ 32-33.) The flooding issues have persisted despite numerous complaints from Plaintiffs. (Am. Compl. ¶ 36.)

## C. Plaintiffs' Complaint

On October 24, 2018, Plaintiffs filed suit in this Court, (ECF No. 1), and, on January 25, 2019, Plaintiffs filed their Amended Complaint, (ECF No. 15). Based on the above facts, Plaintiffs presented eight counts in their Amended Complaint. (Am. Compl. ¶¶ 38-63.) Counts I and II alleged that Defendant's lease terms and other policies violated 42 U.S.C. § 3604(b) by discriminating against tenants based on familial status and national origin. (Am. Compl. ¶¶ 38-44.) Specifically, Count I alleged that Defendant's lease terms and rules "explicitly include more restrictive terms and conditions on families with children than on families without children, and are not justified by any business necessity." (Am. Compl. ¶ 40.) Count II argued that the overlap between tenants with children and Hispanic/Latino tenants "is so significant, [the Park's] owners and staff knew or should have known that familial status discrimination predictably and adversely impacted Hispanic/Latino residents." (Am. Compl. ¶ 43.) Relatedly, Count III alleged that Defendant violated 42 U.S.C. § 3604(c) by publishing terms in its lease, rules and violation notices that "facially indicate[d] a preference, limitation, and discrimination based on familial status by singling out children for worse treatment." (Am. Compl. ¶ 47.)

Mirroring Counts I through III, Counts IV, V and VI raised claims of housing discrimination under Virginia's Fair Housing Act. (Am. Compl. ¶¶ 49-58.) Specifically, Count IV alleged that Defendant's lease and rules violated Virginia's Fair Housing Act by discriminating against tenants with children. (Am. Compl. ¶ 51.) Likewise, Count V reiterated that the overlap between tenants with children and Hispanic/Latino tenants imputed to Defendant a knowledge that its discrimination against tenants with children would adversely impact tenants of Hispanic/Latino origin. (Am. Compl. ¶ 54.) And Count VI mirrored the claims in Count III,

alleging that Defendant violated Virginia's Fair Housing Act by publishing a lease, rules and violation notices that indicated a preference for tenants without children. (Am. Compl. ¶ 58.)

Finally, Counts VII and VIII alleged that Defendant violated the MHLRA and VRLTA. (Am. Compl. ¶¶ 59-70.) Specifically, Count VII alleged that Defendant's lease and incorporated rules included several provisions, as mentioned above, which violated either statute. (Am. Compl. ¶ 60.) And Count VIII alleged that Defendant's failure to address the storm-water drainage problems violated the MHLRA, specifically Va. Code § 55-248.43(2). (Am. Compl. ¶¶ 62-63.)

From these counts, Plaintiffs seek relief in the form of reimbursement of the per-resident surcharge paid by each Plaintiff for their minor children; actual, emotional and dignitary damages for Defendant's allegedly discriminatory practices; a declaratory judgment that certain provisions in Defendant's lease and homeowner policies through November 2017 violated the MHLRA and VRLTA; monetary damages for the MHLRA violations; injunctive relief to repair the drainage problems at the Park; and, attorneys' fees and costs pursuant to the relevant federal and state statutes. (Am. Compl. ¶¶ 64-70.)

### D. Defendant's Third-Party Complaint

On February 22, 2019, Defendant filed its Third-Party Complaint against Croft. (Third-Party Compl. ("TP Compl.") (ECF No. 20).) In its Third-Party Complaint, Defendant claimed that Croft — who owns the property immediately downstream from the drainage ditch at issue in Count VIII of Plaintiffs' Amended Complaint — "negligently buried metal piping in the path of the drainage ditch which is not suitable for its intended purpose." (TP Compl. ¶¶ 4, 8.) Defendant further alleged that Croft's attempts to fix the drainage pipe only made the drainage

6

problem worse, because the new piping did not meet the capacity and elevation criteria needed to effectively drain the water from Defendant's property. (TP Compl. ¶ 8.)

Based on these facts, Defendant alleged three counts for relief. (TP Compl. ¶¶ 11-25.) In Count I, Defendant alleged that Croft's negligence in installing and repairing the drainage pipes on his property provides Defendant with a common law right to contribution and indemnity for the costs incurred because of Count VIII of Plaintiffs' Amended Complaint. (TP Compl. ¶¶ 11-16.) In Count II, Defendant claimed that Croft's actions constitute negligence and negligence *per se*, because Croft's drainage repairs violated statutes and local ordinances designed to protect Defendant. (TP Compl. ¶¶ 17-22.) And Count III of the Third-Party Complaint alleged that Croft's actions constitute a nuisance. (TP Compl. ¶¶ 23-25.)

From these counts, Defendant seeks the award of any attorneys' fees and costs incurred in defending Count VIII of the Amended Complaint; reimbursement of any costs associated with court-ordered repairs to the Park's drainage system; the issuance of an injunction against Croft to repair the issues raised by Plaintiffs in Count VIII; and, damages incurred by Defendant due to Croft's alleged negligence. (TP Compl. at 6.)

### E. Croft's Motion to Dismiss

On May 15, 2019, Croft filed his Motion to Dismiss, moving to dismiss Defendant's Third-Party Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), or, in the alternative, to sever the Third-Party Complaint from this action pursuant to Rule 12(h)(3). (Mot. to Dismiss (ECF No. 45).) In support of his Motion, Croft argues that the allegations in Count VIII of the Amended Complaint, which relate to the drainage issues at the Park, "are unrelated to the alleged civil rights violations and discriminatory actions by Defendant" that give rise to federal question jurisdiction. (Mem. in Supp. of Mot. to Dismiss

("Croft Mem.") (ECF No. 48) at 3.) Because Count VIII does not share the allegations of discrimination that give rise to federal question jurisdiction in Counts I through III, Croft contends that the Court cannot exercise supplemental jurisdiction over Count VIII and should therefore dismiss that Count and the Third-Party Complaint for lack of subject matter jurisdiction. (Croft Mem. at 3.) If the Court does find that it may exercise supplemental jurisdiction over Count VIII, Croft further argues that the Court should nonetheless dismiss the Third-Party Complaint, because the Third-Party Complaint fails to raise any claims over which this Court has original jurisdiction and, thus, the state-law issues presented in the Third-Party Complaint substantially predominate over any federal claims. (Croft Mem. at 4 (citing 28 U.S.C. § 1367(c)(2)).)

On May 28, 2019, Plaintiffs filed their Memorandum in Opposition to Croft's Motion to Dismiss, (Mem. of L. in Opp. to Third-Party Def. Croft's Mot. to Dismiss ("Pls.' Mem.") (ECF No. 49)), and, on May 29, 2019, Defendant filed its Memorandum in Opposition, (Mem. in Opp. to Third-Party Def. Croft's Mot. to Dismiss ("Def.'s Mem.") (ECF No. 50)), rendering the matter now ripe for review.

### III. STANDARD OF REVIEW

A motion made pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the court's jurisdiction over the subject matter of the complaint. A defendant moving for dismissal for lack of subject matter jurisdiction may either, as here, attack the complaint on its face, asserting that the complaint "fails to allege facts upon which subject matter jurisdiction can be based," or may attack "the existence of subject matter jurisdiction in fact, quite apart from any pleadings." *White v. CMA Constr. Co., Inc.*, 947 F. Supp. 231, 233 (E.D. Va. 1996) (internal citations omitted). In either case, the plaintiff bears the burden of proof to establish jurisdiction.

8

*Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). The Court must dismiss an action if it determines that it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3).

Relevant here, 28 U.S.C. § 1367 provides that "in any civil action over which the districts courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to [the original jurisdiction claims] that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). As the Supreme Court has explained, to exercise supplemental jurisdiction, "[t]he state and federal claims must derive from a common nucleus of operative fact . . . [and must be so closely related] that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding. . . ." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966). Though the pendent claims need not "restate[] . . . the same basic ground for recovery," *White v. County of Newberry, S.C.*, 985 F.2d 168, 172 (4th Cir. 1993), the "common nucleus of operative fact" standard requires more than a "superficial factual overlap" between the original jurisdiction and pendent claims, *Shavitz v. Guilford Cty. Bd. of Ed.*, 100 F. App'x 146, 150 (4th Cir. 2004) (internal citations omitted). Indeed, the standard itself requires that the common facts be *operative*, meaning that the original jurisdiction and pendent claims "revolve around a central fact pattern" such that the "two claims' proof will rest on [a] central issue." *White*, 985 F.2d at 172; *see also Mason v. Richmond Motor Co., Inc.*, 625 F. Supp. 883, 886 (E.D. Va. 1986) ("Not only must the facts be at the *nucleus* of both State and federal claims, the facts common to each case must be the *operative* facts . . . . The facts which operate to give rise to the federal claim must be the facts which operate to give rise to the State claim." (emphasis included)).

Moreover, even if a court finds the exercise of supplemental jurisdiction appropriate under § 1367(a), Congress has enumerated certain instances when a court may, in its discretion, decline to exercise such jurisdiction, including when: (1) the pendent claim "raises a novel or complex issue of State law;" (2) the pendent claim "substantially predominates over the claim or claims over which the district court has original jurisdiction;" (3) "the district court has dismissed all claims over which it has original jurisdiction;" or, (4) there otherwise exist "compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(1)-(4). Ultimately, the exercise of supplemental jurisdiction falls within the discretion of the district court. *Hartman v. Univ. of Md. at Balt.*, 595 F. App'x 179, 180 (4th Cir. 2014); *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) (noting that the doctrine of supplemental jurisdiction "is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in a manner that most sensibly accommodates a range of concerns and values" (quoting *Carnegie-Mellon v. Cohill*, 484 U.S. 343, 350 (1988))). In the exercise of that discretion, courts generally should consider "'principles of [judicial] economy, fairness [to litigants], convenience, and comity.'" *Hartman*, 595 F. App'x at 180 (quoting *Cohill*, 484 U.S. at 357).

## IV. ANALYSIS

Because Defendant's Third-Party Complaint relies on the Court's exercise of jurisdiction over Count VIII of the Amended Complaint, the Court will first consider whether it may exercise supplemental jurisdiction over Count VIII. If the Court lacks subject matter jurisdiction over Count VIII, the Court must dismiss both that Count and Defendant's Third-Party Complaint. For the purposes of its analysis, the Court finds that it has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over Counts I through III of the Amended Complaint, which present claims under the federal Fair Housing Act, 42 U.S.C. § 3601 *et seq.*

Croft argues that the Court lacks supplemental jurisdiction over Count VIII and the Third-Party Complaint, because Count VIII raises no allegations of discrimination. (Croft Mem. at 3.) Because the counts giving rise to federal questions jurisdiction relate to allegedly discriminatory practices by Defendant and Count VIII relates only to Defendant's failure to repair drainage issues, Croft contends that no common nucleus of operative fact exists between Count VIII and the federal counts. (Croft Mem. at 3.)

Plaintiffs respond that the Court may exercise supplemental jurisdiction over Count VIII, because Count VIII involves: (1) the same parties as Counts I through III; (2) the same relationship between the parties — that of a landlord and tenant — as in Counts I through III; (3) the same time period as the period at issue in Counts I through III; and, (4) the same source of the legal obligations — the lease agreements — giving rise to Counts I through III. (Pls.' Mem. at 3-4.) Defendant responds with the same arguments as Plaintiff, adding that considerations of fairness, judicial economy and the avoidance of inconsistent results weigh in favor of denying Croft's Motion. (Def.'s Mem. at 3-4.) Specifically, because the Court has not dismissed Plaintiffs' federal claims, Defendant contends that dismissal of Count VIII and the Third-Party Complaint would result in added costs and risk inconsistent results between the state and federal courts. (Def.'s Mem. at 3-4.)

The Court agrees with Croft that Count VIII and the federal claims do not share a common nucleus of operative fact. Although supplemental jurisdiction does not require shared legal elements between claims, consideration of the elements of federal and pendent claims helps to determine whether the claims share operative facts. *See Tobey v. Keiter, Stephens, Hurts, Gray & Shreaves*, 2013 WL 4101879, at *4 (E.D. Va. Aug. 13, 2013) ("To determine whether the federal and state law claims . . . derive from a common nucleus of operative fact, it is first

necessary to determine what Plaintiff will be required to prove under each type of claim raised in the Complaint.").

Here, Counts I and II allege that Defendant's lease terms and policies discriminated against tenants with children and Hispanic/Latino tenants in violation of 42 U.S.C. § 3604(b), requiring Plaintiffs to "demonstrate that the housing action or practice being challenged was motivated by a discriminatory purpose or had a discriminatory impact." *Matarese v. Archstone Pentagon City*, 761 F. Supp. 2d 346, 362 (E.D. Va. 2011) (citing *Betsey v. Turtle Creek Assocs.*, 736 F.2d 983, 986 (4th Cir. 1984)). To demonstrate discriminatory purpose, Plaintiffs must show that discriminatory animus constituted a motivating factor in Defendant's decision to implement the challenged practices. *Id.* (internal citations omitted). Plaintiffs may prove "discriminatory intent either directly, through direct or circumstantial evidence, or indirectly, through the inferential burden shifting method known as the *McDonnell Douglas* test." *Corey v. HUD ex rel. Walker*, 719 F.3d 322, 325 (4th Cir. 2013) (internal quotations omitted). Alternatively, Plaintiffs may rely on a theory of discriminatory impact by challenging an otherwise facially neutral policy as actually or predictably causing "a significant disparate impact on a protected group." *Matarese*, 761 F. Supp. 2d at 362. Plaintiffs may carry this burden using statistical evidence. *Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 994 (1988).

As for Plaintiffs' third federal claim, Count III, to establish a violation of 42 U.S.C. § 3604(c), Plaintiffs must present evidence showing that: (1) Defendant published a written or oral statement; (2) Defendant published the statement with respect to the sale or rental of a dwelling; and, (3) the statement "indicated a preference, limitation, or discrimination on the basis of [a protected class]." *Corey*, 719 F.3d at 326 (citing *White v. HUD*, 475 F.3d 898, 904 (7th Cir. 2007)). Plaintiffs need not present evidence of Defendant's motivation in publishing the

disputed statements, but must satisfy the finder of fact that an ordinary reader "would believe that the statement[s] suggest[] a preference, limitation, or discrimination based on a protected status." *Id.* (internal citations omitted).

By comparison, Count VIII alleges violations of Va. Code § 55-248.43(2), part of the MHLRA, which provides that mobile home park landlords shall:

> Make all repairs and do whatever is necessary to put and keep [a] manufactured home park in a fit and habitable condition, including, but not limited to, maintaining in a clean and safe condition all facilities and common areas provided by him for the use of tenants of two or more manufactured home lots.

Va. Code Ann. § 55-248.43(2) (West 2019); (Am. Compl. ¶¶ 61-63.) Although Virginia caselaw on § 55-248.43(2) and the MHLRA proves scant, cases addressing an analogous provision under the VRLTA have treated the VRLTA as part of the lease, violations of which constitute a breach of contract. *Sanders v. UDR, Inc.*, 2010 WL 3927804, at *4 (E.D. Va. Oct. 4, 2010). Thus, plaintiffs raising claims under the VRLTA and, by analogy, the MHLRA must establish: (1) a legally enforceable obligation under the Act incorporated into the lease; (2) a breach of that obligation; and, (3) damages caused by such breach. *Id.* (internal citations omitted). In the context of § 55-248.43, to establish breach, Plaintiffs must provide proof of a defect or unsafe condition "of such a nature and kind that they render the premises unsafe or unsanitary and thus unfit for living . . . ." *Cf. Guy v. Tidewater Inv. Props.*, 1996 WL 33497700, at *7 (Va. Cir. Ct. Dec. 20, 1996) (addressing proof required to show breach of analogous VRLTA provision).

Clearly, the federal claims and Count VIII do not "rest on [a] central issue." *White*, 985 F.2d at 172. Indeed, in their Memorandum in Opposition, Plaintiffs fail to point to any common operative facts that give rise to both the federal and pendent claims. (Pls.' Mem. at 3-4.) For one, although Plaintiffs correctly note that the federal and pendent claims involve the same parties and the same landlord-tenant relationship, the mere existence of a common relationship

between the parties in federal and pendent claims cannot, alone, render a pendent claim part of the same case or controversy. *Cf. Williams v. Long*, 558 F. Supp. 2d 601, 604 (D. Md. 2008) (noting that "'[s]everal courts have rejected the notion that the employer-employee relationship single-handedly creates a common nucleus of operative fact between the FLSA claim and peripheral state law claims'" (quoting *Wilhelm v. TLC Lawn Care, Inc.*, 2008 WL 640733, at *3 (D. Kan. Mar. 6, 2008))); *Nicol v. Imagematrix, Inc.*, 767 F. Supp. 744, 747-48 (E.D. Va. 1991) (finding employer-employee relationship insufficient to establish common nucleus of operative fact between Title VII discrimination claim and state law breach of contract claims). If the Supreme Court intended for federal courts to exercise supplemental jurisdiction over claims based only on the parties involved and their relationship, it would have instructed that only a common nucleus of operative parties need exist between federal and pendent claims. The Court did not do so.

Neither do the additional commonalities highlighted by Plaintiffs — the shared time period and source of legal obligations between the federal and pendent claims — prove sufficient, either singly or in combination, to establish supplemental jurisdiction over Count VIII. Courts have drawn a clear distinction between claims arising during the same time period and claims arising from common facts during the same time period. *See, e.g., Shupe v. DBJ Enters.*, 2015 WL 790451, at *7 (M.D.N.C. Feb. 25, 2015) (declining to exercise supplemental jurisdiction over wrongful termination claim brought alongside FLSA claim, in part, because although the wrongful termination claim likely arose around the same time as the FLSA claim, "the events alleged in [the plaintiff's] wrongful termination claim [could] be maintained without any mention of the FLSA claim"). The former constitutes a mere superficial connection; whereas the latter likely proves sufficient to confer jurisdiction. And, contrary to Plaintiffs'

14

suggestion, Defendant's legal obligations under the federal Fair Housing Act arise not from the lease agreements with Plaintiffs, but from Defendant falling within the coverage of the Act. *See* 42 U.S.C. § 3603 (delineating the coverage of the Fair Housing Act based on the type of dwelling being sold or rented). Thus, unlike Count VIII, which relies on the incorporation of the MHLRA into Plaintiffs' lease agreements, Defendant's liability under the federal claims arises independent of the leases, leaving no common source of legal obligation between the federal claims and Count VIII.

Ultimately, for Plaintiffs to maintain causes of action under Counts I through III, they need not rely on facts giving rise to Count VIII and vice versa. Whereas Counts I through III require the Court to look at the offending terms in Defendant's lease agreements and other policies and consider Defendant's discriminatory intent in implementing those terms, the discriminatory effect of those terms or whether those terms indicated a preference against a protected class, Count VIII requires the Court to consider only whether the MHLRA applied to the landlord-tenant relationship in question and whether Defendant's actions in relation to the flooding at the Park violated the MHLRA, without consideration of discriminatory intent or effect, and without consideration of any terms within the leases themselves.[1] Moreover,

---

[1] Although Croft does not challenge the Court's jurisdiction over Count VII of the Amended Complaint, which alleges that certain provisions in the lease agreements and homeowner policies violated the VRLTA and the MHLRA, the Court finds that it may exercise supplemental jurisdiction over Count VII, because, like Counts I through III, Count VII will require the Court to consider the terms of Defendant's lease and other policies and their consistency with federal or state law. Indeed, the allegedly unlawful lease terms in Count VII support Plaintiffs' allegations of housing discrimination in Counts I through III. (*See* Am. Compl. ¶ 26 (alleging that the provisions at issue in Count VII "materially contributed to a restrictive living environment for Plaintiffs," denying them "the full and peaceful enjoyment of their homes and community").) Because the exercise of supplemental jurisdiction over Count VII aligns with principles of judicial economy, fairness, convenience and comity, and because none of the § 1367(c) factors weigh in favor of dismissal, the Court, in its discretion, will retain jurisdiction over Count VII.

Plaintiffs do not allege that Defendant failed to address the drainage problems for discriminatory reasons or with discriminatory effect, (Am. Compl. ¶¶ 29-36), distinguishing this case from other Fair Housing Act cases in which courts have exercised supplemental jurisdiction over state claims, at least in part, because the state claims formed part of the housing discrimination alleged by the plaintiffs, *see, e.g., Byrd v. KTB Capital LLC*, 2019 WL 652529, at *8 (W.D.N.Y. Feb. 15, 2019) (assuming jurisdiction over state-law failure-to-repair claim where the plaintiff alleged that the defendant failed to repair because of the plaintiff's race and disabled status); *Radcliffe v. Avenel Homeowners Ass'n, Inc.*, 2013 WL 556380, at *7 (E.D.N.C. Feb. 12, 2013) (assuming supplemental jurisdiction over state tort claims, before declining to exercise such jurisdiction, where tort claims formed part of the alleged discrimination against the plaintiff); *Petty v. Portofino Council of Coowners, Inc.*, 702 F. Supp. 2d 721, 732 (S.D. Tex. 2010) (exercising supplemental jurisdiction over defamation, libel and slander claims, because the plaintiffs alleged that defamation, libel and slander formed part of the Fair Housing Act violations). Put differently, the scope of the issues in the federal claims and the scope of the issues in Count VIII do not overlap. Accordingly, Count VIII does not form part of the same case or controversy as the federal claims and this Court may not extend its limited jurisdiction over that Count or the Third-Party Complaint filed in response to it.

As for potential prudential arguments favoring the exercise of supplemental jurisdiction, the Court finds such arguments inapposite given the absence of common operative facts necessary to exercise supplemental jurisdiction in the first place. Although Defendant cites to cases in which courts used prudential considerations to support the exercise of supplemental jurisdiction, (Def.'s Mem. at 3-4), those cases nonetheless predicated the exercise of that jurisdiction on the existence of common operative facts, *see Schaller v. Gen. Dynamics Corp.*,

2013 WL 5837666, at *3 (E.D. Va. Oct. 28, 2013) ("[The common nucleus of operative fact] test, applied here, points persuasively to the conclusion that the claims set forth in Counts II and IV have in common an essential element of proof. . . ."); *Hunter by Conyer v. Estate of Baecher*, 905 F. Supp. 341, 345 (E.D. Va. 1995) ("Both the federal and state claims in this case center around determining what duties exist regarding the presence of lead paint in a rental residence. There is one set of operative facts and one victim seeking damages."); *see also Banner Life Ins. Co. v. Bonney*, 2011 WL 5027498, at *6 (E.D. Va. Oct. 21, 2011) (finding supplemental jurisdiction over crossclaim under more stringent crossclaim rules, because the original interpleader complaint and the crossclaim arose out of the same "allegedly unlawful conduct"). Indeed, 28 U.S.C. § 1367(a) permits district courts to exercise supplemental jurisdiction only if the pendent claims "are so related to the claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III," meaning common operative facts, not prudential considerations, determine the existence of supplemental jurisdiction, with prudential considerations coming into play only after a court establishes jurisdiction and moves on to decide whether to retain it. To hold otherwise would permit this Court to use mere convenience of the parties as a justification for exceeding the jurisdictional limits established by the Constitution and the duly enacted laws of Congress, rendering such limits meaningless. *See Mason*, 625 F. Supp. at 886 (noting that "[o]nly Congress is empowered to expand the jurisdiction of the district courts" (citing U.S. Const. art. III, § 1)).

Because Count VIII and Plaintiffs' federal claims do not share a common nucleus of operative fact, the Court cannot exercise supplemental jurisdiction over Count VIII. Without jurisdiction over Count VIII, the Court must also decline to exercise jurisdiction over

17

Defendant's Third-Party Complaint against Croft. Accordingly, the Court must dismiss both Count VIII and the Third-Party Complaint for lack of subject matter jurisdiction.

IV. CONCLUSION

For the reasons set forth above, the Court GRANTS Croft's Motion to Dismiss (ECF No. 45) and DISMISSES WITHOUT PREJUDICE Count VIII of Plaintiffs' Amended Complaint (ECF No. 15) and Defendant's Third-Party Complaint (ECF No. 20). An appropriate Order shall issue.

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all counsel of record.

It is so ORDERED.

_____/s/_____
David J. Novak
United States Magistrate Judge

Richmond, Virginia
Date: June 11, 2019